# UNITED STATES DISTRICT COURT

for the

Southern District of Ohio

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>An Apple iPhone seized from Larry Jewell's Residence<br>on December 7, 2023, that is currently located at the ATF<br>Field Office Evidence Locker in Columbus, Ohio | )<br>)<br>)<br>)<br>)<br>) Case No. 2:24-mj-150 |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the _____ Southern _____ District of _____ Ohio _____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC § 841 (a)(1) | Distribution of and possession with intent to distribute a controlled substance |
| 18 USC § 922 (g)(1) | Possession of firearm by a prohibited person |

The application is based on these facts:

See attached Affidavit of applicant.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

JEFFREY KASZA
(Affiliate)
Digitally signed by JEFFREY KAS
(Affiliate)
Date: 2024.03.19 10:31:36 -04'00'

*Applicant's signature*

Jeffrey Kasza, ATF TFO

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

_____ Telephone/FaceTime _____ *(specify reliable electronic means)*.

Date: _____ March 19, 2024 _____

Elizabeth A. Preston Deavers
United States Magistrate Judge

City and state: _____ Columbus, Ohio _____

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **IN THE MATTER OF THE SEARCH OF AN APPLE iPHONE SEIZED FROM LARRY JEWELL'S RESIDENCE ON DECEMBER 7, 2023, THAT IS CURRENTLY LOCATED AT THE ATF FIELD OFFICE EVIDENCE LOCKER IN COLUMBUS, OHIO.** | **CASE NO.    2:24-mj-150_____** |

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, **Jeffrey Kasza**, being first duly sworn, hereby depose and state as follows:

## I. INTRODUCTION AND AGENT BACKGROUND

1.       I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—an electronic device described more fully in Attachment A (the "**SUBJECT DEVICE**")—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2.       I am a Columbus, Ohio Division of Police (CPD) detective assigned as a Task Force Officer (TFO) with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF). I have been employed by the Columbus Division of Police since 2004. My responsibilities as a Task Force Officer include the investigation of violent criminal street gangs, narcotics and firearms traffickers, money launderers, and firearms-related crimes. I have participated in the execution of search warrants and arrests related to the above- referenced offenses. By virtue of my experience and training, I am familiar with residential search warrants. Throughout this Affidavit, reference to "investigators" specifically refers to criminal investigators. As part of my duties as an ATF TFO, I investigate criminal violations relating to federal firearms offenses,

including the unlawful possession of firearms and ammunition by individuals who have been convicted in any court, of a crime punishable by imprisonment for a term exceeding one year. I have participated in numerous investigations of criminal violations relating to illegal firearms possession, firearms trafficking and shooting investigations.

3.      I know based on my training and experience that cell phones are pervasive part of life in American society and that they are ubiquitously used.  I also know that living without a cell phone in American society can be a challenging endeavor.

4.      I know based on my training and experience that drug traffickers frequently utilize cell phones to facilitate narcotics transactions.  They often use telephone calls, text messaging, and social media applications to arrange the purchase and sale of narcotics, including to transmit information regarding the price, quantity, and/or delivery or transportation of controlled substances.

5.      I know based on my training and experience that individuals who possess firearms and ammunition often possess other items commonly used or acquired in connection with the possession of firearms and ammunition.  Some of these items include, but are not limited to, other firearms, firearm parts, additional ammunition, firearm receipts, firearm brochures or owner's manuals, records of sale or acquisition of firearms, firearm magazines, and holsters.

6.      I know that individuals who possess firearms and ammunition frequently utilize cell phones to take photographs and videos of themselves in possession of their firearms and ammunition.  These same individuals also utilize cell phones, to include calls, texts, and social media applications, to arrange the purchase and sale of firearms, ammunition, and/or firearm-related accessories.

7.      I know that drug traffickers often utilize electronic equipment such as cell phones to generate and/or store information concerning their drug trafficking.

8.      Drug Trafficking Organizations ("DTOs") depend on maintaining extensive contacts between and among suppliers, couriers, customers, and others involved in the supply, transportation, distribution, sales, and marketing of controlled substances.  Members of a DTO must maintain contact with one another and use expedient means of communication.  To do this, continued access to telephone communication, including text and multimedia messaging, is necessary.  The use of voice and text messaging communication is essential to maintaining timely contacts with suppliers and those down the organizational chain, including local traffickers.  Members of DTOs must also meet to formulate plans concerning their drug trafficking and other illegal activities and to divide their illegal proceeds.  Through training and experience, I know that members of a DTO often utilize their cell phones, including the push-to-talk, direct connect features, and text messaging to arrange such meetings.  I also know that drug traffickers often take or cause to be taken photographs and videos of them, their associates, their property, and their product.  Drug traffickers usually maintain these photographs and videos in their possession, often on their cell phones or other portable electronic devices.

9.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all my knowledge about this matter.

## II.  IDENTIFICATION OF THE DEVICE TO BE EXAMINED

10.     The property to be searched is an Apple iPhone, contained in a black and off white case with a black pop socket, which was recovered from the north east bedroom,

JEWELL's bedroom, during the execution of a federal search warrant at that location on December 7, 2023. The **SUBJECT DEVICE** is currently stored in the ATF Field Office Evidence Locker in Columbus, Ohio, as EXHIBIT #000036.

11.     The applied-for warrant would authorize the forensic examination of the **SUBJECT DEVICE** for the purpose of identifying electronically stored data particularly described in Attachment B.

### III. PROBABLE CAUSE

12.     Based on this affidavit, I submit that probable cause exists that Larry JEWELL has violated federal firearms laws, to wit, 18 U.S.C. § 922(g)(1), possession of a firearm by a prohibited person, and federal drug laws, to wit, 18 U.S.C. § 841(a)(1), distribution of and possession of a controlled substance with intent to distribute (the "TARGET OFFENSES"). Furthermore, your affiant submits there is probable cause to search the **SUBJECT DEVICE**, as described in Attachment A, for evidence, fruits, and instrumentalities of those crimes, as described in Attachment B.

13.     On September 8, 2023, Bureau of Alcohol, Tobacco, Firearms, & Explosives (ATF) Crime Intelligence Center (CGIC) Columbus Police Department (CPD) Task Force Officer (TFO) Jeff Kasza received information from a Confidential Source (CS) who stated that he/she had information about a shooting. This CS has supplied TFO Kasza with credible criminal information in the past that has led to numerous search warrants and felony charges on multiple individuals.

14.     The CS stated that he/she had recently spoken with a "violent narcotics and firearms trafficker" named Larry JEWELL. Per the CS, JEWELL stated that on August 29, 2023, at approximately 5:00 am, he fired gunshots into 319 E. INNIS AVE. JEWELL stated he

was targeting Christina BROWN and her crew out of a dispute. JEWELL stated that BROWN was selling narcotics out of 319 E. Innis Ave and knew she would not call the police to report the shooting. Larry JEWELL is further identified as follows: Larry L. JEWELL, White/ Male, 6'5" / 190 lbs, FBI# 335913ED7.

15.      The CS stated JEWELL is a large-scale narcotics trafficker who operates his narcotics business on the south side of Columbus, Ohio. The CS stated that he/she had witnessed JEWELL with large amounts of narcotics and numerous firearms on many occasions. The CS stated that JEWELL is a Konvicted Family gang member and brags about violent acts that he had committed in the past. The CS stated that JEWELL constantly posts firearms and large amounts of U.S. currency on his Facebook page, "Herekome TrouBble". The CS stated that JEWELL sells and purchases firearms and will also trade narcotics for firearms. TFO Kasza knows through his training and experience that individuals commonly utilize their cellular phone to take photographs of themselves and their property to post on Facebook. TFO Kasza also knows though his training and experience that individuals commonly utilize their cellular phone to "go live" and post live videos of themselves on Facebook.

16.      TFO Kasza performed a records check on the CPD Patrolview reporting system and found a ShotSpotter run that was reported on August 29, 2023, at 5:41 am in the area of 310 E. Innis Ave. The Patrolview run stated that 14 rounds were fired "high capacity" from the middle of the street. CPD Officers responded to the location and located six 5.56 caliber spent shell casings which were collected as evidence (CPD Report 230673517). CPD Officers turned in the spent 5.56 shell casings to the Columbus Police Crime Laboratory where they were entered into the National Intergraded Ballistics Information Network (NIBIN), NIBIN Case # CPCL-2023-5644A.

17. TFO Kasza conducted a Facebook search of "Herekome TrouBble" and found a page that showed JEWELL listed as the profile picture.

18. On August 31, 2023, at approximately 2:02 pm, JEWELL posted a Live video on his Facebook page. TFO Kasza watched the video and could see JEWELL handling multiple firearms. One of the firearms JEWELL was handling appeared to be an AR style pistol. TFO Kasza knows through his training and experience that AR style pistols commonly accept 5.56 caliber live ammunition. TFO Kasza could see JEWELL handling large stacks of U.S. currency. TFO Kasza could also see JEWELL was wearing a gold chain that had a "KF" pendant. TFO Kasza knows through his training and experience that "KF" stands for Konvicted Family, a gang that was started in the prison system. Below are multiple screen shots taken from the posted video.





19.     TFO Kasza conducted a search of Facebook for Christina BROWN.  TFO Kasza found a Facebook profile in the name "Christina Elizabeth" that showed a picture of Christina BROWN as the profile photo.  TFO Kasza found a post on BROWN's Facebook that talked about the shooting into her home.

20.     On September 14, 2023, TFO Kasza caused a query of the National Crime Information Center (NCIC) relating to JEWELL. On July 19, 2010, JEWELL was convicted of Aggravated Assault, 2903.12 O.R.C.  On February 22, 2013, JEWELL was convicted of Engaging in a Pattern of Corrupt Activity, 2923.32 O.R.C.  On June 8, 2017, JEWELL was convicted of Possession of Drugs, 2925.11 O.R.C.  TFO Kasza recognizes that the aforementioned convictions prohibit JEWELL from possessing firearms pursuant to Title 18 U.S.C. §922(g)(1).  TFO Kasza also recognizes that JEWELL is prohibited from possessing a firearm pursuant to 2923.13 of the Ohio Revised Code (ORC).

21.     TFO Kasza searched JEWELL's name in the CPD reporting system. TFO Kasza

found that on October 17, 2022, CPD Officers were dispatched on a menacing report. CPD Officers arrived at scene and were met by the victim. The victim stated that Larry JEWELL pointed a gun at him and threatened to shoot and kill that victim. The victim stated he believed that his life was in danger and believed that JEWELL was going to shoot him. The victim ran and called the police to report the incident.

22. On September 14, 2023, TFO Kasza received information from a Confidential Source (CS) who stated that he/she had information about Larry JEWELL. This CS has supplied TFO Kasza with credible criminal information in the past that has led to numerous search warrants and felony charges on multiple individuals. TFO Kasza has verified previous information supplied from this CS to be true.

23. The CS stated that he/she had recently spoken with JEWELL. The CS stated that JEWELL provided phone number (220) 228-4438 to be his personal cellphone number. The CS stated that JEWELL also utilizes the cellular phone assigned phone number (220) 228-4438 to conduct his narcotics business. The CS stated that JEWELL also utilizes the above listed phone to access JEWELL's Facebook account.

24. Based on information from the CS, I searched Viapath Command, a website which provides access to recorded jail calls. I located calls made to the (220) 228-4438 phone number, including a September 3, 2023, call from ███████, an individual incarcerated at the time at the ████████████████████████. During that call, ██████ spoke with a person whose voice I recognized to be Jewell's. During the call, ██████ referred to the other person on the call (JEWELL) as "Larry." JEWELL made statements to ██████ that ██████'s girl shorted his "trap" a half a gram. I know through my training and experience that "trap" is a street term for a place where drugs are sold. Later in the recorded phone call, JEWELL stated,

"[I]t's all my shit, all this shit is my shit." JEWELL stated that when he collected his money, it was short. Based on my training and experience, I believe that JEWELL was having a conversation with ███ about picking up money from a place where drugs were sold for JEWELL, and that the amount available for pickup was insufficient (i.e. short.)

25.     Based on my review of Jewell's criminal history, I am aware that Jewell has multiple convictions in the Franklin County, Ohio, Court of Common Pleas and Municipal Court for drug-related offenses, including a conviction in 2013 for six counts of Aggravated Trafficking in Drugs, a conviction in 2017 for Attempted Possession of Cocaine, and a conviction in 2018 for Possession of Heroin and Possession of Cocaine.

CONFIDENTIAL SOURCE (CS2)

26.     On September 26, 2023, ATF TFO Kasza received information from a Confidential Source (CS2) who stated that he/she had information about JEWELL. CS2 provided information to TFO Kasza that has been verified by previous information supplied by other investigators and confidential sources of information.

27.     CS2 stated that he/she was inside of 319 E. Innis Ave on August 29, 2023, at approximately 5:40 am when the home was struck by gunfire. CS2 stated that when the incident happened, he/she did not know who was responsible for the shots fired at the location.

28.     On or about September 20, 2023, CS2 stated that he/she was driving on E. Innis Ave when a silver vehicle went around his/her vehicle and began shooting at his/her vehicle. CS2 stated that his/her vehicle got struck by multiple bullets. CS2 stated that he/she did not see who was in the silver vehicle and stated that they were not sure of a make or model of the vehicle. CS2 stated that he/she did not make a police report.

29.     On September 22, 2023, CS2 stated that he/she was driving in a vehicle with a

male that goes by the street name of "Big Man" and a male named Jordan. CS2 stated that he/she pulled into the gas station located at S. High St and E. Woodrow Ave. CS2 stated that he/she was followed into the parking lot by a black male that goes by the street name "T". CS2 stated that "T" was driving a beat-up silver vehicle. CS2 stated that "T" exited the silver vehicle and pointed a rifle at the vehicle CS2 was in. CS2 stated that he/she fled the gas station parking lot and went to 319 E. Innis Ave. CS2 stated that "T" showed up in the same silver vehicle a few moments later and began shooting at the house. CS2 stated he/she fled in his/her vehicle during the shooting.

30.    On or about September 23, 2023, CS2 stated that he/she received a phone call from JEWELL. JEWELL told CS2 that he was responsible for the shooting and that he was after "▮▮▮▮▮" and ▮▮▮▮. CS2 stated that JEWELL made a statement that if CS2 gave JEWELL "▮▮▮▮▮", he would spare ▮▮▮▮. CS2 stated that "T" sells narcotics for JEWELL and believes that "T" is being directed by JEWELL to kill "▮▮▮▮▮" and ▮▮▮▮. CS2 stated that he/she is only giving the police this information because he/she believed that JEWELL will not stop until he gets "▮▮▮▮▮" and ▮▮▮▮.

31.    TFO Kasza searched CPD reports and found that on September 20, 2023, at 11:19 pm there was a ShotSpotter Investigative Lead Summary Report that reported seventeen (17) rounds fired, high capacity in the area of 1762 S. 6th St. (ShotSpotter ID: 616-215518). CPD Officers responded to the location of the ShotSpotter alert and found fourteen (14) spent ".223R" shell casings in the intersection of E. Innis Ave and S. 6th St. A resident stated that after he heard the gunshots, he looked out of his window and saw a silver 4 door Honda Civic leaving north on S. 6th St at a high rate of speed. Officers did not locate any vehicles or structures that were struck by gunfire. CPD Officers collected the spent shell casings and

turned in the spent shell casings to the Columbus Police Property Room.

32.     TFO Kasza searched CPD reports and found that on September 22, 2023, there were two ShotSpotter alerts in the area of 319 E. Innis Ave that came in seconds from each other at 3:23 pm.  One ShotSpotter Investigative Lead Summary reported ten (10) rounds fired, high capacity (ShotSpotter ID: 616-215627) and the second ShotSpotter Investigative Lead Summary reported five (5) rounds fired (ShotSpotter ID: 616-215628).  CPD Officers responded to the location of the ShotSpotter alerts and found multiple locations had been struck by gunfire.  Investigators believe that two parties were shooting at each other.  CPD Crime Scene Search Unit responded and collected spent casings from the incident which were turned into the Columbus Police Property Room.  A male named ███████████, DOB ████████ was found to be at scene.

33.     TFO Kasza conducted a search of The NIBIN Enforcement Support System (NESS) and found that there was a NIBIN association made between the shooting that occurred on September 20, 2023, at the intersection of E. Innis Ave and S. 6th St. and the shooting that occurred on September 22, 2023, in the area of 319 E. Innis Ave. ".223R" caliber spent shell casings were recovered at both locations.  A NIBIN analysis of the two locations indicates a strong likelihood that they were discharged by the same .223 caliber firearm.

34.     TFO Kasza is familiar with a juvenile male that goes by the street name of "███" who CS2 is referring to.

<u>CPD ARREST- JEWELL</u>

35.     On November 9, 2023, Columbus Police Officers were working routine patrol in the area Parsons Ave and E Morrill Ave. Officers observed a brown Cadillac SRX (bearing OH Tag HJN7886) parked near the intersection of E Morrill Ave and Lisle Alley.

36.      Officers observed JEWELL make eye contact with officers and walk towards the stated vehicle. Officers then observed JEWELL open the rear passenger-side door, reach towards his waistband, and reach inside the vehicle and onto the rear passenger-side floorboard. Officers observed JEWELL then close the rear passenger-side door and distance himself from the vehicle. Officers observed a female, in the front passenger seat, and later positively identified her, via CPD Mugshots ID # 61749C, as Ashli CLARK.

37.      Officers approached the stated vehicle and observed a handgun, with a loaded extended magazine, in plain view on the rear passenger side floorboard. Officers detained JEWELL and CLARK.

38.      Officers recovered a Glock 45, 9mm from the rear passenger-side floorboard. Officers removed the loaded extended magazine and recovered thirty-one (31) live 9mm rounds from the magazine. Officers discovered one (1) additional live 9mm round in the chamber of the recovered Glock 45. Officers observed three (3) separate serial numbers located on the firearm: BLPX824, BXPV303, and BXZH913.

39.      CPD Records advised officers that CLARK had misdemeanor warrants for her arrest (Case # 21CRB5651 for Drug Abuse Instruments, and Case # 20TRD14419 for No Operator's License and Fail to Control).

40.      Officers told JEWELL he was under arrest for Having Weapons while Under Disability. Officers searched JEWELL, incident to arrest, and observed that JEWELL was wearing a camouflage Kevlar vest. JEWELL made an unsolicited comment that he was wearing the Kevlar vest in fear of being shot. Officers contacted CPD Gun Crimes Detective W. Hettinger #1834 who advised Officers to transport JEWELL and CLARK to CPD Headquarters to be processed and interviewed.

41.     The tag attached to the stated Cadillac returned, in LEADS, to a Hyundai. Due to the stated vehicle failing to display tags that properly return to the vehicle, Officers completed a parking citation and arranged for the stated vehicle to be impounded.  The vehicle identification number of the 2011 brown Cadillac SRX was 3GYFNAEY5BS675641.

42.     CPD Gun Crimes Detective Hettinger read CLARK her Constitutional Rights and CLARK agreed to speak with Detective Hettinger.  During the interview, CLARK made statements that JEWELL has a storage unit and herself and JEWELL were in the process of taking the rest of JEWELL's property to the storage unit.  CLARK stated that she had never been to JEWELL's storage unit and did not know where it was located.  CLARK stated that JEWELL moved out of his current home and put his property at a storage unit.

43.     CPD Gun Crimes Detective Hettinger read JEWELL his Constitutional Rights and JEWELL agreed to speak with Detective Hettinger.  JEWELL stated that he had been shot in the leg a few months prior.  JEWELL stated that he was in the process of moving and the vehicle he was driving is filled with his stuff.  JEWELL stated he was taking his stuff to storage.  JEWELL stated that he was wearing the bulletproof vest because he is "beefing" with some young kids that shot up his house.  JEWELL stated that he had some Glock magazines for a 10mm handgun and live ammunition in the Cadillac.  JEWELL stated that the police did not take the ammo or 10mm Glock magazine and stated that they were his.  JEWELL stated that he bought the bulletproof vest, 10mm Glock magazine and live ammunition from the Westland Gun Show.

44.     Officers submitted the recovered firearm, magazines, live ammunition, and Kevlar vest to the CPD Property Room as evidence.

EXECUTION OF STATE SEARCH WARRANT- CADILLAC SRX

45.      On November 13, 2023, TFO Kasza presented a state search warrant to Franklin County Municipal Court Judge Mike McAllister. At approximately 3:02 pm, Judge McAllister found probable cause and signed the state search warrant provided by TFO Kasza. At approximately 4:00 pm, ATF Investigators arrived at the CPD Impound Lot located at 2700 Impound Lot Rd, Columbus, Ohio, 43207 to execute the above search warrant. ATF Investigators located the 2011 Cadillac SRX in row 33.

46.      Investigators located a camo bulletproof vest on the floor of the vehicle in front of the passenger's front seat. Investigators located an Apple iPhone, contained in a black and off-white case with a black pop socket, on the front passenger's seat.

47.      Investigators located a black Glock gun case in the right rear passengers' seat of the vehicle. Investigators opened the black Glock gun case and located two (2) Glock 10mm firearm magazines and three (3) boxes of TULAMMO .223 ammunition, 20 cartridges per box. Two of the .223 ammunition boxes were full of 20 rounds and the third box contained 14 live rounds (Total of 54 live rounds).

48.      Investigators located a storage unit business card in a black purse that was on the passenger's front seat. Listed on the storage unit card was the Gate Code Number 2481609 enter and the unit number listed as #248.

49.      Investigators contacted the owner of the 2011 Cadillac SRX and returned the Apple iPhone, contained in a black and off-white case with a black pop socket, that was recovered from the front passenger's seat.[1]

<u>EXECUTION OF STATE SEARCH WARRANT- EXTRA SPACE STORAGE</u>

50.      On November 14, 2023, at approximately 9:30 am, TFO Hill and ATF SA Matt

---

[1] See paragraphs below regarding December 7, 2023 search warrant execution at an apartment where JEWELL was residing and an iPhone was again recovered.

Behnfeldt arrived at Extra Space Storage located at 2087 S. Hamilton Rd. TFO Hill served Extra Space Storage with a state subpoena to obtain the current rental agreement for unit number 248. Extra Space Storage provided TFO Hill with the rental agreement for the unit. Unit 248 was rented in the name of ███████████ with a listed address of ███████████, ██████, Ohio. The listed emergency contact is listed as Ashli JEWELL with a contact number of 614-246-1609. On November 9, 2023, Ashli CLARK listed her home address as ███████████████, Ohio and her phone number as 614-246-1609 when she was arrested by the Columbus Police Department. Extra Space Storage also confirmed that the gate code number ██████ enter is specific to unit number 248. That gate code matches the gate code card that was located in the 2011 Cadillac SRX during the search warrant on November 13, 2023.

51.     At approximately 9:45 am, TFO Kasza presented a state search warrant to Franklin County Municipal Court Judge Mike McAllister. At approximately 10:03 am, Judge McAllister found probable cause and signed the state search warrant provided by TFO Kasza. At approximately 10:05 am, ATF Investigators arrived at Extra Space Storage, Unit number 248, 2087 S. Hamilton Rd, Columbus, Ohio, to execute the above search warrant.

52.     ATF Investigators located a Masterpiece Arms, Defender 9mm pistol, SN: FX35841 with one live round in the chamber and an extended magazine that contained 17 live 9mm rounds. ATF Investigators located a second Masterpiece Arms, Defender 9mm pistol, SN: FX28141. Investigators also located a bag full of live ammunition. Investigators counted 34 live rounds of miscellaneous ammunition and one box of TULAMMO .223 live ammunition (20 live rounds). The box of TULAMMO matches the three boxes of TULAMMO .223 ammunition that was recovered out of JEWELL's Cadillac during the vehicle search warrant.

53.     TFO Kasza reviewed NIBIN Enforcement Support System (NESS) Crime Gun 773-23-005390.  The recovered Masterpiece Arms, SN: FX35841 had a NIBIN association to a Toledo Police Department assault case that occurred on August 5, 2015.

ATF CI CONTACT- JEWELL

54.     On November 17, 2023, ATF SA Benner received information from an ATF Confidential Informant (CI) who stated that he/she had information about JEWELL.  This CI has supplied Investigators with credible criminal information in the past that has led to search warrants and felony charges on multiple individuals.

55.     The CI stated that he/she was contacted by Larry JEWELL via a Facebook video call.  JEWELL provided the CI with phone number 614-246-1609 as his contact phone number.  The CI then spoke to JEWELL on the phone.  JEWELL told the CI that he had Methamphetamine for sale.  JEWELL stated to the CI that he could sell him up to a pound of Methamphetamine at a time.  TFO Kasza recognized that the phone number, 614-246-1609, that was provided by JEWELL matches the phone number that was listed as the emergency contact phone number on the Extra Space Storage Unit 248 (ROI # 15).

EXECUTION OF STATE SEARCH WARRANT- VERIZON

56.     On November 20, 2023, ATF TFO Kasza obtained and executed a state search warrant for information associated with the cellular telephone assigned call number (220) 228-4438, believed to be utilized by Larry JEWELL.

57.     TFO Kasza presented a state search warrant to Franklin County Court of Common Pleas Judge Carl Aveni.  At approximately 3:45 pm, Judge Aveni found probable cause and signed the state search warrant provided by TFO Kasza.  At approximately 4:18 pm, TFO Kasza served the above-listed search warrant to Verizon.

58.     On November 20, 2023, at approximately 5:11 pm, ATF Investigators began receiving Global Positioning System (GPS) coordinates relating to the cellular device assigned call number (220) 228-4438.

SURVEILLANCE OF JEWELL PING DATA

59.     On November 21, 2023, at approximately 9:20 am, TFO Kasza located JEWELL's 2011 Cadillac SRX, Ohio License Plate KFG9125 via JEWELL's Cell Phone Ping location data.  JEWELL's Cadillac was parked in the area of 195 CURRIER DR.

60.     At approximately 1:03 pm, TFO Wright witnessed Ashli CLARK exit apartment building 195 CURRIER DR, Columbus, Ohio.  CLARK got into the 2011 Cadillac and drove out of the area.  At approximately 1:15 pm, CLARK pulled the Cadillac onto MARKHAM DR.

61.     At approximately 1:16 pm, TFO Wright witnessed Larry JEWELL exit apartment building 195 CURRIER DR, Apartment B, and walk up to the 2011 Cadillac. CLARK exited the vehicle and JEWELL got into the front driver's seat.  JEWELL parked the Cadillac for CLARK and then exited the vehicle.  At approximately 1:20 pm, TFO Wright witnessed JEWELL and CLARK walk back into 195 CURRIER DR. Apartment B.

CS CONTACT- JEWELL- 870 ALLISON DR

62.     ATF TFO Kasza received information from a CS who stated that he/she had information about JEWELL.  This CS has supplied TFO Kasza with credible criminal information in the past that has led to numerous search warrants and felony charges on multiple individuals. TFO Kasza has verified previous information supplied from this CS to be true.

63.     On November 25, 2023, at approximately 7:00 pm, the CS stated that he/she was in the area of ███████████, Columbus, Ohio, ████. The CS stated that he/she witnessed a brown Cadillac SUV pull into and park in the driveway of ███████████. The CS stated

that he/she knew the brown Cadillac to be JEWELL's vehicle and had seen JEWELL in the Cadillac on numerous previous occasions.  The CS stated that he/she approached the Cadillac and could see that an unknown male black was the driver and JEWELL was the front seat passenger.  The CS stated that JEWELL had a large black rifle at his feet in the brown Cadillac.  The CS stated that JEWELL made a comment that people were trying to kill him and that is why he had his rifle.  The CS stated that the unknown male black driver entered and exited █████ ██████████ and then the drove off approximately 2 minutes after they arrived.

64.     TFO Kasza searched JEWELL's Cell Phone Ping location data and saw that on November 25, 2023, at approximately 7:37 pm, JEWELL's Cell Phone Ping location arrived in the area of 195 CURRIER DR.

SURVEILLANCE OF 195 CURRIER DR- APARTMENT B- JEWELL

65.     On November 27, 2023, TFO Kasza and TFO Wright conducted surveillance of 195 CURRIER DR a residence known to be utilized by JEWELL.

66.     At approximately 6:54 pm, TFO Kasza witnessed JEWELL exit the rear door of 195 CURRIER DR, Apartment B.  JEWELL got into the front driver's seat of a 2010 silver Chevrolet Cobalt, Ohio License Plate JTW3953 that was parked on CURRIER DR.  JEWELL drove off eastbound.

67.     At approximately 7:05 pm, JEWELL pulled back up to 195 CURRIER DR and parked in the street close to the above address.  JEWELL got out of the 2010 Chevy holding what appeared to be a large bag of carryout food. JEWELL walked to the rear door of 195 CURRIER DR and went into Apartment B.  JEWELL did not knock and walked directly into the apartment.

68.     TFO Kasza checked JEWELL's Cell Phone Ping location via Geotime live and

saw that at approximately 7:07 pm, JEWELL's Cell Phone Ping location was in the area of 195 CURRIER DR.

69.     TFO Kasza ran the Ohio License Plate JTW3953 on Ohio Law Enforcement Gateway (OHLEG). The Ohio License Place came back registered to a 2010 silver Chevrolet Cobalt. The listed owner of the Chevrolet was a male named Raymond CLARK, with a listed address of 195 CURRIER DR, Apartment B.

70.     At approximately 7:50 pm, TFO Kasza witnessed Ashli CLARK and Larry JEWELL exit the rear door to 195 CURRIER DR, Apartment B. TFO Kasza witnessed what appeared to be JEWELL locking the door after he exited the apartment. CLARK and JEWELL walked to JEWELL's 2010 Cadillac, Ohio License Plate KFG9125 which was parked on CURRIER DR. CLARK got into the front driver's seat and JEWELL got into the front passenger's seat.

71.     At approximately 7:51 pm, CLARK and JEWELL drove off eastbound on CURRIER DR. TFO Wright followed CLARK and JEWELL as they pulled into a parking lot at the corner of S. High St and Southgate Dr. CLARK and JEWELL entered a convenience store. At approximately 8:00 pm CLARK and JEWELL arrived back at 195 CURRIER DR and parked on the street. CLARK and JEWELL sat in their vehicle until approximately 8:12 pm when they both exited their vehicle and began walking to 195 CURRIER DR. TFO Kasza witnessed JEWELL walk up to 195 CURRIER DR, Apartment B and appeared to use a key to unlock the door. JEWELL and CLARK then entered the apartment.

72.     TFO Kasza checked JEWELL's Cell Phone Ping location via Geotime live and saw that at approximately 8:07 pm, JEWELL's Cell Phone Ping location was in the area of 195 CURRIER DR.

RECEIPT OF INFORMATION – FCSO – JEWELL

73.     On December 4, 2023, TFO Kasza, received information from Franklin County Sheriff's Office (FCSO) Special Investigations Unit (SIU) Sgt. James Jodrey about JEWELL.

74.     FCSO SIU Sgt. Jodrey informed TFO Kasza that on October 17, 2023, he used a covert Facebook account to message JEWELL.  Sgt. Jodrey stated he messaged JEWELL on his "Herekome TrouBble" Facebook account.  Sgt. Jodrey inquired about purchasing a handgun from JEWELL and provided JEWELL with a phone number Sgt. Jodrey could be contacted at.  JEWELL called Sgt. Jodrey from phone number (220) 228-4438 and stated that he had a handgun for sale.  JEWELL and Sgt. Jodrey set up a time to meet for JEWELL to sell him the handgun.  Sgt. Jodrey did not show up on the agreed time and date.

75.     On October 19, 2023, JEWELL called Sgt. Jodrey again and offered him a handgun for sale.  Sgt. Jodrey agreed to purchase the handgun from JEWELL, and they set up a meeting for the next day.  While Sgt. Jodrey had JEWELL on the phone, he asked JEWELL if he had a rifle for sale.  JEWELL stated that his rifle was "his baby", and he was not getting rid of it.  Sgt. Jodrey did not show up to meet JEWELL on the agreed time and date.

NESS SEARCH – JEWELL

76.     On December 4, 2023, TFO Kasza conducted a records search via ATF NIBIN Enforcement Support System (NESS).   TFO Kasza conducted a records search of the spent .556 caliber shell casings that were recovered on August 29, 2023, at 310 E. INNIS AVE.

77.     TFO Kasza found that on September 14, 2023, CPD Officers responded to a shooting at 501 HOSACK ST.  It was reported that an unknown suspect was driving a gray SUV and open fire on two victims that were seated in a vehicle.  One of the victims were struck by the gunfire.  CPD Investigators recovered spent .556 caliber shell casings from the scene.

78.     A NIBIN association was made between a shooting that occurred on September 14, 2023, at 501 HOSACK ST to the shots fired on August 29, 2023, at 310 E. Innis Ave, where JEWELL was listed as a suspect.  A NIBIN analysis of the two locations indicates a strong likelihood that they were discharged by the same .556 caliber firearm.

<u>HISTORICAL CELL PHONE DATA POINTS</u>

79.     ATF CGIC Intelligence Research Specialist Lori Speaks reviewed JEWELL's Cell Phone location data via Pen Link (PLX).  Between the dates of November 9, 2023, and December 5, 2023, JEWELL's Cell Phone location data was recorded 1278 times in the area of 195 CURRIER DR, Apt B.

<u>SURVEILLANCE OF 195 CURRIER DR- JEWELL</u>

80.     On December 6, 2023, TFO Kasza conducted surveillance of 195 CURRIER DR, Apartment B, a residence known to be utilized by JEWELL.

81.     At approximately 3:50 pm, TFO Kasza witnessed JEWELL exits 195 CURRIER DR, Apartment B.  JEWELL got into the front driver's seat of a blue GMC Yukon XL, Ohio License Plate JXK1862.  TFO Kasza ran the license plate on OHLEG and the plate came back registered a 2003 Hyundai sedan. At approximately 3:52 pm, CLARK exited 195 CURRIER DR. Apartment B and walked to meet up with JEWELL.  JEWELL exited the GMC and stood with CLARK. At approximately 3:55 pm, a school bus pulled up and dropped off a young child.  The young child met up with CLARK and JEWELL and they all walked into 195 CURRIER DR, Apartment B.

82.     At approximately 3:58 pm, JEWELL exited 195 CURRRIER DR, Apartment B and got back into the blue GMC Yukon XL.  At approximately 4:05 pm, JEWELL left the area and pulled into the Wendy's drive thru located at 3545 S. High St.  At approximately 4:26 pm,

JEWELL arrived back and parked on the street in front of 195 CURRIER DR.  At approximately 4:34 pm, JEWELL exited the blue GMC Yukon XL and entered 195 CURRIER DR, Apartment B.

FEDERAL SEARCH WARRANT OF 195 CURRIER DR, Apartment B.

83.     On December 7, 2023, at approximately 10:35 am, the CPD INTAC Unit executed the Federal Search Warrant at 195 CURRIER DR., Apartment B.  CPD INTAC knocked and announced their presence.  CPD INTAC made entry into 195 CURRIER DR., Apartment B and found two adult males, two adult females and one young child inside the residence.  Once the location was deemed clear, CPD INTAC handed the location over to ATF Investigators.  JEWELL and CLARK were located inside the northeast bedroom.  A male, later identified as ███████████ and a female, later identified as ███████████ and a small child were located in the northwest bedroom.

84.     ATF TFO Butterworth took photographs of the residence, showing an accurate depiction of the location prior to the search.

85.     ATF Investigators located a black lockbox on the floor of the northeast bedroom. Investigators opened the unlocked lockbox and located suspected narcotics.  Investigators could see a large clear plastic baggie of purple powder, multiple clear plastic baggies of white powder and other clear plastic baggies that appeared to contain suspected narcotics.  Investigators know through their training and experience that narcotics dealers are commonly mixing color into their fentanyl prior to sale.  Investigators also found numerous items and paperwork in the northeast bedroom bearing JEWELL's name.  Investigators turned in the suspected narcotics to the Columbus Police Crime Laboratory for drug identification, CPD Laboratory Case CPCL-2023-07478.

86.     On February 8, 2024, TFO Kasza received CPD Drug Identification Report, Laboratory Case CPCL-2023-07478.  The Drug Identification Report identified 73.03 total grams of Fentanyl, 46.5446 total grams of Cocaine, and 0.317 total grams of Methamphetamine Cocaine were recovered from the black lockbox in the northeast bedroom.

87.     Investigators searched the northeast bedroom, JEWELL's bedroom, and located an Apple iPhone, contained in a black and off-white case with a black pop socket.  The iPhone was located on a plastic shelf.  Investigators placed the iPhone in airplane mode.  It should be noted that the recovered iPhone matched the iPhone that was recovered on November 13, 2023, during the execution of the search warrant on the 2011 Cadillac SRX that investigators returned to the owner of the Cadillac.  The iPhone was turned in as evidence to the Columbus ATF Field Office as EXHIBIT #000036.  This iPhone is the **TARGET DEVICE**.

88.     Investigators located a "magic bullet" mixer that contained white residue in the bedroom closet.  TFO Kasza knows through his training and experience that narcotics dealers commonly use blenders to mix narcotics prior to packing the narcotics for sale.

RECORDED INTERVIEW- JEWELL

89.     On December 7, 2023, at approximately 3:22 pm, TFO Kasza and SA Benner conducted an interview of JEWELL who was found inside of 195 CURRIER DR, Apartment B during a search warrant execution.  JEWELL was transported to OSU East Hospital due to a complaint of injury prior to contact with ATF Investigators.  TFO Kasza and SA Benner conducted the interview of JEWELL at OSU East Hospital, room 27.

90.     TFO Kasza introduced himself and SA Benner to JEWELL.  Unsolicited, JEWELL immediately began to speak and stated that his car got shot up, his house got shot up and he got shot at.  JEWELL stated that he went to the gun show and got himself a vest.

JEWELL stated that he called Chrissy Brown and asked her why he was getting shot at.

91.     TFO Kasza read JEWELL his Constitutional Rights from the CPD I-20 Constitutional Rights Form.  JEWELL stated he understood his rights and agreed to speak with TFO Kasza.  JEWELL signed the Constitutional Rights form.  SA Benner witnessed the reading and signing of the Constitutional Rights.

92.     JEWELL stated that himself and Ashil CLARK had been living at 195 CURRIER DR, Apartment B since CLARK got released from jail.  TFO Kasza conducted a search of the Franklin County Sheriff's Jail Management System (FCS) and found that CLARK was released from Franklin County Corrections Center on November 15, 2023.  JEWELL stated that ███████████ was Ashli CLARK's ██████.  JEWELL stated that they were paying $300.00 in rent to live at the listed location.

93.     TFO Kasza informs JEWELL that Investigators recovered drugs in his bedroom of 195 CURRIER DR, Apartment B.  JEWELL mumbles and makes a statement that "you know I'm on dope".  TFO Kasza asks JEWELL to identify what drugs Investigators found in his bedroom and JEWELL stated "coke, crack, my girl smokes crack, and I do fetti".  JEWELL states that the purple powder is probably fentanyl.  JEWELL stated that the off-white color powder is fentanyl.  JEWELL stated that the "white shit" is also fentanyl.  JEWELL stated that the black lockbox that contained the narcotics belonged to himself and CLARK.

94.     TFO Kasza showed JEWELL a screenshot of himself with a handgun and a rifle taken from when JEWELL was live on Facebook which is listed below.



95.     JEWELL made a comment that the rifle was a .223 caliber rifle.

96.     TFO showed JEWELL a screenshot of himself with a different rifle taken when

JEWELL was live on Facebook which is listed below.



97.     JEWELL stated that the firearm he was holding in the above photo was a 12 gauge.  JEWELL stated the photo was taken inside of his old house on ELLERY DR.  JEWELL stated that the shotgun belongs to the next-door neighbor of his old ELLERY DR. house.  JEWELL stated his neighbors' names were ███████████ .  JEWELL stated that ███████ ███ had moved out of their house and do not live there anymore.

98.     TFO Kasza questioned JEWELL about two shootings, one that happened on September 20, 2023, on E. Innis Ave and S. 6th St and one that happened on September 22, 2023, at 319 E. Innis Ave.  TFO Kasza explained to JEWELL that both shootings were believed to been fired by the same .223 rifle.  JEWELL stated that LEDBETTER contacted him right after the incident that happened on September 22, 2023, at 319 E. Innis Ave.  JEWELL stated that LEDBETTER told him that he had just got into a shootout at 319 E. Innis Ave.

99.     TFO Kasza references the search warrant that was executed on November 14, 2023, at Extra Space Storage, unit number 248 (ROI #16).  JEWELL made a statement that the storage unit was not his and the two (2) recovered guns belonged to a male named ████ . JEWELL stated he tried to purchase the two (2) firearms from ████ .  JEWELL stated he handled the two (2) firearms recovered from the storage unit.  JEWELL stated that his DNA would be on the two (2) firearms recovered from the storage unit.  JEWELL stated that after his house got shot up, he tried to purchase the firearms for protection.

100.    JEWELL stated that he purchases his narcotics from a male named ████ ███████ who lives at ███ ███████████ .  JEWELL stated that he purchases crack and cocaine from NORTH.

101.    TFO Kasza asked JEWELL the approximate weight of the narcotics recovered from his bedroom.  JEWELL stated, "it's probably a quarter".  TFO Kasza knows through his

training and experience that when JEWELL refers to "a quarter" he is referring to a measurement of weight of his narcotics product. JEWELL stated he is selling narcotics to pay for his cigarettes and food. JEWELL stated he just doesn't sell narcotics to anybody; he just sells to his close people. JEWELL then stated that he supplies narcotics to people to keep them from being sick.

102. JEWELL made a statement at the end of the interview that the narcotics found in his bedroom "was for personal use".

<u>FIREARM RECOVERY- 4151 ELLERY DR</u>

103. On December 7, 2023, at approximately 5:30 pm, TFO Kasza, TFO Wright, TFO Orick and TFO Hill followed up on information provided by JEWELL during an interview of JEWELL at OSU East Hospital, room 27. TFO Kasza was familiar with address ███ ████████ and knew that JEWELL's blue GMC Yukon, Ohio License Plate JXK1862 was parked in the driveway of this address on October 25, 2023 (ROI #9). TFO Kasza believed that this is the neighbor's house JEWELL stated that contained the 12-gauge shotgun he was seen holding during his Facebook live video.

104. TFO Kasza and TFO Wright knocked on the front door of █████████ and were met at the front door by a male named ██████████ and ██████████████. TFO Kasza asked █████████ if he had known his neighbor who moved out of 4159 ELLERY DR. █████████ stated "yes". █████████ stated that a few weeks ago, when JEWELL moved out of 4159 ELLERY DR, he came over to ████████ 's house and asked him to hold onto JEWELL's shotgun for a few days. █████████ stated he did not want to store JEWELL's firearm but felt like he didn't have a choice. █████████ stated that JEWELL also stored a vehicle in ███ ████ 's driveway.

105. █████████ stated to TFO Kasza that he wanted JEWELL's shotgun out of his

home due to having ████████ in the home. ████████ invited TFO Kasza and Wright into

his home. TFO Hill and Orick were standing on the front sidewalk. TFO Kasza asked ██

████ if it would be ok if TFO Hill and Orick also came into his house and ████████ said

"sure". Investigators entered ████████████ and stood in the living room with ████████

and ████████████. TFO Kasza asked ████████ where JEWELL's shotgun was in his

home. ████████ stated that he had the firearm locked in hall closet. TFO Kasza asked ██

████ if he wanted Investigators to take JEWELL's firearm out of his house and ████████

stated "yes, please". TFO Kasza walked with ████████ and ████████ unlocked his hall

closet and allowed TFO Kasza to open the door. TFO Kasza could see the shotgun leaning

against the inside wall of the closet. ████████ stated that he had not touched the shotgun since

JEWELL brought the firearm to his house. TFO Kasza recovered the Citadel Boss 25, 12-

gauge, SN: 20-77533. The shotgun had an extended magazine that was loaded with 10 live 12-

gauge shotgun rounds. The weapon identified above is a Francolin International Arms, Model

Citadel Boss-25, 12-gauge shotgun, bearing SN: 20-77533 and is a weapon that will expel a

projectile by the action of an explosion. The weapon identified above was manufactured in the

country of Turkey. The weapon identified above was recovered by law enforcement officers in

the State of Ohio. It is the opinion of SA Benner that this firearm moved in/affected

interstate/foreign commerce to arrive in the State of Ohio.

106.    TFO Kasza asked ████████ if he was storing anything else for JEWELL and he

stated "no". TFO Kasza asked ████████ if he knew where any other of JEWELL's firearms

were and ████████ stated that JEWELL told him that he had a storage unit. ████████ stated

that JEWELL had two (2) "Mac-10" firearms that he was storing in his storage unit. TFO

Kasza asked ████████ how he knew that JEWELL was storing the Mac-10's in his storage

unit and ████████ stated that JEWELL told him.

107.     The **SUBJECT DEVICE** came into the **ATF**'s possession by execution of search warrants. Therefore, while the ATF might already have all necessary authority to examine the **SUBJECT DEVICE**, I seek this additional warrant out of an abundance of caution to be certain that an examination of the Device will comply with the Fourth Amendment and other applicable laws.

108.     The **SUBJECT DEVICE** is currently in storage at the ATF Field Office Evidence Locker in Columbus, Ohio**.**  In my training and experience, I know that the Device has been stored in a manner in which its content, to the extent material to this investigation, in substantially the same state as they were when the Device first came into the possession of the ATF.

## TECHNICAL TERMS

109.     Based on my training and experience, I use the following technical terms to convey the following meanings:

   a.     Wireless telephone:   A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals.   These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones.  A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone.  In addition to enabling voice communications, wireless telephones offer a broad range of capabilities.  These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and

moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b.    Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c.    Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d.    GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records of the locations where it has been. Some

GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e.      PDA:  A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments, or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device

    f.      Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

110.    Based on my training, experience, and research, and from consulting publicly available product technical specifications, I know that the **SUBJECT DEVICE** has the capabilities to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

111.    Based on my training and experience, I also know that the **SUBJECT DEVICE** could contain audio and video recordings, ledgers, notes, and other digital information. I know based on training and experience in previous drug investigations that individuals involved in the distribution of controlled substances will often use cell phones and other electronic communication devices to maintain contact with drug associates, drug sources of supply, and drug customers. Further, drug traffickers utilize cell phones to store records, electronic receipts, notes, ledgers, contact information, customer lists, bank statements, physical addresses, e-mail addresses, to retain and transmit photographs, text messages and e-mail messages, to access the internet (to track packages), and to communicate with other drug traffickers concerning the purchasing, transportation, sale, distribution, or possession of controlled substances. I know that drug traffickers will often take "trophy" pictures of drugs, money, firearms, and other items associated with their illegal activities. I know that drug

traffickers will often communicate via voice telephone calls, text messages, email, and other electronic messaging to one another to facilitate the distribution of controlled substances. I also know that persons involved in transporting controlled substances often communicate with each other via electronic devices. Additionally, I know that drug traffickers typically use multiple cell phones to communicate with their co-conspirators, compartmentalizing different members of the organization on individual phones.

## VII. ELECTRONIC STORAGE AND FORENSIC ANALYSIS

112. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

113. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how each device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the **SUBJECT DEVICE** because:

   a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

   b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c.      A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d.      The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.      Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

114.    *Nature of examination*. Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the electronic device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection to determine whether it is evidence described by the warrant.

115.    *Manner of execution*. Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the

physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## VIII. CONCLUSION

116.    I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the **SUBJECT DEVICE** described in Attachment A to seek the items described in Attachment B.

JEFFREY KAS: Digitally signed by JEFFREY KAS
(Affiliate)          (Affiliate)
                     Date: 2024.03.19 10:32:17 -04'00'
_____
Jeffrey Kasza, Task Force Officer
Bureau of Alcohol, Tobacco, Firearms and
Explosives

Sworn to before me and signed in my
presence and/or by reliable electronic means.

_____
Elizabeth A. Preston Deavers
United States Magistrate Judge

**ATTACHMENT A**

**Property to Be Searched**

The **SUBJECT DEVICE** is further described as an Apple iPhone, contained in a black and off-white case with a black pop socket which was located in JEWELL's bedroom during the execution of a federal search warrant at 195 Currier Street, Apt. B, Columbus, Ohio, on December 7, 2023. The **SUBJECT DEVICE** is currently stored in the ATF Field Office Evidence Locker in Columbus, Ohio, as EXHIBIT #000036.

This warrant authorizes the forensic examination of the **SUBJECT DEVICE** for the purpose of identifying electronically stored information described in Attachment B.

**ATTACHMENT B**

1.      All records on the **SUBJECT DEVICE** described in Attachment A that relate to violations of Title 21, U.S.C., Section 841, and/or Title 18 U.S.C, Section 922(g)(1), that involve Larry JEWELL, since August 1, 2023, including the following:

a.      Lists of customers and related identifying information;

b.      Types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

c.      Any information relating to preparing drugs for distribution;

d.      Any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

e.      Any information recording JEWELL's schedule or travel;

f.      All bank records, checks, credit card bills, account information, and other financial records;

g.      Any photographs or video recordings depicting drugs, drug proceeds, firearms, ammunition, or other firearm parts and accessories

h.      Any records or information relating to JEWELL possessing a firearm;

i.      Any records or information relating to JEWELL knowing he is not lawfully permitted to possess a firearm.

2.      Evidence of user attribution showing who used or owned the device described in Attachment A at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

As used above, the terms "records" and "information" include all the foregoing items of evidence in whatever means they may have been created or stored, including any form of computer or electronic storage and any photographic form.